# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **SHANNON ROY CHADWICK #115662,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:16-cv-00712 |
| ) | Judge Crenshaw / Frensley |
| **CORRECTIONS CORPORATION OF** ) | |
| **AMERICA, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Defendants' Motion for Summary Judgment. Docket No. 51. Along with their Motion, Defendants have contemporaneously filed a supporting Memorandum of Law (Docket No. 52) and a Statement of Undisputed Material Facts (Docket No. 56), along with the Declarations of Bobby Aylward (Docket No. 53), James Bridges (Docket No. 54), and Blair Leibach (Docket No. 55).

Plaintiff has not filed a Response to the instant Motion, but has filed a document entitled "Response to Defendants of [*sic*] Statement of Facts."[1] Docket No. 66.

With leave of Court (Docket No. 68), Defendants have filed a Reply. Docket No. 69.

Plaintiff filed this pro se, in forma pauperis action pursuant to 42 U.S.C. §1983, alleging that Defendants violated his Eighth Amendment constitutional rights by being deliberately

---

[1] Plaintiff's "Response to Defendants of [*sic*] Statement of Facts" does not contain the required citations to the record and is not in a form required by Fed. R. Civ. P. 56 or the Local Rules.

indifferent to his serious medical need by denying him medical care for his hernia, and by being deliberately indifferent to his conditions of confinement when a bunk bed fell on him. Docket Nos. 1, 23. Plaintiff sues Corrections Corporation of America (now "CoreCivic"), Jail physician James Bridges, and Warden Blair Leibach in their individual and official capacities. *Id.* Plaintiff seeks $300,000.00 for "pain and suffering," $300,000.00 for "mental distress, depression," and $300,000.00 for "malpractice." *Id.*

Defendants filed the instant Motion for Summary Judgment and supporting materials arguing that they are entitled to summary judgment because: (1) Plaintiff has failed to exhaust his administrative remedies, as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e; (2) respondeat superior is not a basis for the imposition of liability under §1983 and Plaintiff cannot establish that any official CoreCivic policy, practice, or custom violated his rights; (3) Plaintiff cannot establish individual liability for Defendants Bridges and Leibach as the Jail physician and Jail Warden because he cannot establish that they either encouraged or directly participated in the conduct of which he complains; (4) Plaintiff cannot establish that Defendants were deliberately indifferent to his serious medical needs because the evidence demonstrates that Defendants provided appropriate medical treatment and safe bunk beds to him throughout his incarceration at the Jail; and (5) Plaintiff cannot establish that he suffered more than a de minimis physical injury, as is required under the PLRA for recovery. Docket Nos. 51, 52.

As noted, Plaintiff has not filed a Response to the instant Motion, but has filed a document entitled "Response to Defendants of [*sic*] Statement of Facts" (Docket No. 66) that does not contain the requisite citations to the record and is not in a form required by either Fed.

R. Civ. P. 56 or the Local Rules. In that document, however, Plaintiff acknowledges:

> 12. Dr. Bridges give [*sic*] enough pain meds and see you when ever you have to be seen. . . .
> 13. Dr. Bridges gave Hernia support undergarments that was to [*sic*] small. Also ordered ultrasounds for Mr. Chadwick for October 14, 2015 and another in [*sic*] February 9, 2016 and did order urlourology [*sic*] surgical consult. (date?)
> 14. Mr. Chadwick did see medical providers at the detention facility.
> 15. Mr. Chadwick has never blamed Dr. Bridges for faulty bunk beds.
> 16. Mr. Chadwick <u>did</u> file a grievance on medical and was <u>denied</u> by Mr. Leibach. Being a warden Mr. Leibach should know what's going on between maintenance employees and officers.
> 17. [Mr.] Chadwick did complain of back, neck, and arm numbness due to his health and was ordered x-rays and never received results from them and still suffers to this day.

Docket No. 66.

With leave of Court (Docket No. 68), Defendants have filed a Reply, arguing that even if Plaintiff had properly responded to their Motion or Statement of Undisputed Material Facts, summary judgment would still be warranted because Plaintiff failed to exhaust his administrative remedies, as required under the PLRA, because Plaintiff has not demonstrated that an official CoreCivic policy, practice, or custom violated his constitutional rights, because Plaintiff cannot demonstrate sufficient personal involvement by Defendants Bridges or Leibach in the allegedly violative conduct, and because Plaintiff cannot establish that any of the Defendants were deliberately indifferent to his serious medical need. Docket No. 69.

For the reasons set forth below, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 51) be GRANTED and that Plaintiff's claims be DISMISSED.

## II. Undisputed Facts[2]

### A. Declaration of Bobby Aylward

Mr. Bobby Aylward is a CoreCivic employee involved in the grievance process at the Metro-Davidson County Detention Facility ("Jail"). Docket No. 53, ¶ 1. CoreCivic's administrative grievance system enables inmates at the Jail to seek redress for issues relating to the conditions of their confinement. *Id.*, ¶ 2.

Under Policy 14-05, Inmate/Resident Grievance Procedures, the processing of a standard inmate grievance at the Jail proceeds as follows: (1) Within seven days of becoming aware of a specific grievable issue, the inmate must file an informal resolution. A department-level supervisor or other appropriate official must respond to the informal resolution within fifteen days of receipt; (2) If the inmate is dissatisfied with the response to the informal resolution, the inmate must file a formal grievance within five days, and the grievance officer must respond to the formal grievance within fifteen days of receipt; and (3) If the inmate is dissatisfied with the response to the formal grievance, the inmate must file a grievance appeal within five days, and the warden must respond to the grievance appeal within fifteen days of receipt. *Id.*, ¶ 3. The response of the warden is final and constitutes the exhaustion of administrative remedies. *Id.*

Plaintiff filed several informal resolutions during his incarceration at the Jail, but only one has any bearing on the matter before the Court: on February 22, 2016, Plaintiff filed an informal resolution that he had been denied his medication by "Nurse Eldrige." *Id.*, ¶¶ 4, 5. Plaintiff pursued the first level of the grievance procedure regarding this claim, but did not

---

[2] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

pursue the second or third levels. *Id.*, ¶ 5. Plaintiff failed to exhaust his administrative remedies at the Jail regarding his claim of inadequate medical treatment for a hernia before April 6, 2016. *Id.*, ¶ 6.

**B. Declaration of James Bridges, M.D.**

Dr. James Bridges is employed by CoreCivic and serves as the physician at the Jail. Docket Nos. 54, ¶ 2; 55, ¶ 4. Dr. Bridges, along with other medical providers, continuously evaluated and treated Plaintiff's hernia pain from the date of his incarceration at the Jail on June 8, 2015 through his release date of April 28, 2016. Docket No. 54, ¶ 3. Specifically, Dr. Bridges and other medical providers performed numerous physical evaluations of Plaintiff, ordered Plaintiff hernia support undergarments, provided Plaintiff with medications as necessary, and entered appropriate medical orders. *Id.*, ¶ 4. Additionally, Dr. Bridges ordered two ultrasounds for Plaintiff that were performed on October 14, 2015 and February 9, 2016. *Id.*

Following Plaintiff's February 9, 2016 ultrasound, Dr. Bridges ordered a urology surgical consult for Plaintiff. *Id.*, ¶¶ 4, 5. Dr. Bridges' analysis of the ultrasound was that Plaintiff's hernia did not require emergent surgical repair, and thus, a waiting period of two months to see an offsite specialist was appropriate and was a typical waiting period. *Id.*, ¶ 5.

Unknown to Dr. Bridges because he is not responsible for scheduling, Plaintiff was housed at another facility from March 9, 2016 through March 21, 2016 and missed his scheduled urology surgical consult. *Id.* When Dr. Bridges next saw Plaintiff on April 6, 2016, he rescheduled Plaintiff's urology surgical consult appointment, but Plaintiff was released on April 28, 2016, before his appointment took place. *Id.*

During his incarceration at the Jail, Plaintiff saw Dr. Bridges or a nurse practitioner at

5

least seven times at the Jail, and also saw other medical providers during numerous sick call appointments, in relation to his hernia pain. *Id.*, ¶ 6.

Dr. Bridges did not have any involvement in the maintenance of the bunk beds at the Jail. *Id.*, ¶ 7. Dr. Bridges also did not instruct or encourage CoreCivic employees to inadequately maintain the bunk beds. *Id.*

**C. Declaration of Blair Leibach**

Mr. Blair Leibach is employed by CoreCivic and serves as the Jail Warden. Docket No. 55, ¶¶ 2, 4. CoreCivic operates the Jail under contract with the Metropolitan Government of Nashville and Davidson County, Tennessee. *Id.*, ¶ 3.

Relevant policies are designed and intended to ensure that CoreCivic employees provide adequate medical treatment to inmates, including pharmaceutical services and off-site medical treatment when appropriate, and provide adequate living conditions including safe beds within the housing units. *Id.*, ¶¶ 5-13.

Customs relevant to Plaintiff's claims in this lawsuit mandate that all CoreCivic employees provide inmates with adequate medical treatment, including pharmaceutical services and off-site medical consultations when appropriate, and provide inmates with safe and adequate bunk beds. *Id.*, ¶ 14.

Warden Leibach did not have any involvement in the medical treatment that was provided to Plaintiff during his incarceration at the Jail or in the maintenance of the bunk beds at the Jail. *Id.*, ¶ 15. Warden Leibach also did not instruct or encourage CoreCivic employees to refuse to provide Plaintiff necessary medical treatment or to inadequately maintain the bunk beds. *Id.*

# III. Law and Analysis

## A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendants filed the instant Motion on November 28, 2017. Docket No. 51. Plaintiff has failed to respond to Defendants' Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...
>
> . . .
>
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

As discussed above, although Plaintiff has filed a document entitled "Response to Defendants of [*sic*] Statement of Facts," that document does not contain the requisite citations to the record and is not in a form required by Fed. R. Civ. P. 56 or the Local Rules. Plaintiff has

7

therefore failed to properly respond to Defendants' Statement of Undisputed Material Facts or file his own Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to properly respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

**B. Motion for Summary Judgment**

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the

burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C. 42 U.S.C. § 1983**

    **1. Generally**

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket Nos. 1, 23. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any

> citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**2. Eighth Amendment**

**a. Generally**

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving

standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

**b. Deliberate Indifference To Serious Medical Needs**

The State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated. *Estelle,* 429 U.S. at 104, 97 S. Ct. at 291.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle,* 429 U.S. at 104. This is true "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*. at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105. For instance, courts have held that the accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that Eighth Amendment deliberate indifference claims must contain both an objective component,

11

"that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). Under the Eighth Amendment, inmate plaintiffs, must allege, at the very least, unnecessary pain or suffering resulting from prison officials' deliberate indifference. *Id*. (prisoner alleging that he suffered pain and mental anguish from delay in medical care states a valid Eighth Amendment claim).

As for the subjective element, the Sixth Circuit has held that "a determination of deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). There must, however, be a showing of deliberate indifference to an inmate's serious medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (*citing Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976)). In fact, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). The inquiry, therefore, according to the Sixth Circuit, is "[w]as this individual prison official aware of the risk to the inmate's health and deliberately indifferent to it?" *Thaddeus-X*, 175 F.3d at 402 (*citing Farmer v. Brennan*, 511 U.S. 825, 837, 844, 114 S. Ct. 1970, 1979, 1982-83, 128 L. Ed. 2d 811 (1994)).

### 3. Official Capacity Claims

In complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (*citing Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id*.

As discussed above, Defendants Bridges and Leibach are employed by Defendant CoreCivic. Thus, Plaintiff's claims against Defendants Bridges and Leibach are actually claims against their employer, CoreCivic. Defendant CoreCivic is a private entity that contracts with the State to provide medical care to the inmates of Jail. A private entity that contracts with the State to perform a traditional state function, such as providing medical care to inmates, acts under color of state law and may be sued under § 1983. *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Thus, CoreCivic, is amenable to suit under § 1983.

Section 1983, however, does not permit the imposition of liability based upon *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). In order for CoreCivic to be held liable, therefore, Plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989). *See also, Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690-91 (1978)

(In order to find a governmental entity liable, Plaintiff must establish that (1) he / she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.).

### 4. Individual Capacity Claims

42 U.S.C. § 1983 does not permit the imposition of liability based upon *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 454, 70 L. Ed. 2d 509 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996).

In order for a defendant to be held liable in his individual capacity, a plaintiff must demonstrate that that defendant personally condoned, encouraged, or participated in the conduct that allegedly violated his rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted). *See also, Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (*citing Hays v. Jefferson County,* 668 F. 2d 869, 872-874 (6th Cir. 1982) (The supervisor must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.) Conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990). Plaintiff must establish a "causal connection between the misconduct complained of and the official sued." *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

### D. Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e

A prisoner must exhaust all available administrative remedies before filing a claim under

§1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a) **Applicability of Administrative Remedies**. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of § 1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . . . . We have previously held that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies. . .

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether Plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. § 1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U.S.C. § 1997e(a) in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999). In *Freeman*, Plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force

15

against him. The lower court had dismissed his complaint for failure to exhaust administrative remedies. On appeal, Plaintiff argued in part that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of § 1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not defined in § 1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. . . .
>
> Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

196 F.3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 986 (2002). As the *Porter* Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress

> afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.
>
> . . .
>
> For the reasons stated, we hold that the PLRAs exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

122 S.Ct. at 988, 992 (citations omitted, emphasis added).

### E. The Case at Bar

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the case at bar fall within the meaning of the term "prison conditions" as used in § 1997e(a). He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

It is undisputed that, at all times relevant to the instant action, the Jail had in place a three-step grievance procedure by which inmates could express complaints with the conditions of their confinement, that Plaintiff filed several informal resolutions during his incarceration at the Jail (only one of which is relevant to the instant action), and that Plaintiff, although Plaintiff pursued the first level of the grievance procedure, he did not pursue the second or third level of the grievance procedure. Docket No. 53, ¶¶ 2-6. Because Plaintiff did not pursue his grievance through the second and third levels of the Jail's grievance procedure, Plaintiff has failed to exhaust his administrative remedies as required by the PLRA, and Defendants are entitled to a judgment as a matter of law.

17

Moreover, Plaintiff cannot sustain his official capacity claims against Defendants Bridges or Leibach, as the Jail physician and Jail Warden respectively, because, for purposes of official capacity liability under §1983, as has been discussed above, as employees of CoreCivic, Defendants Bridges and Leibach stand in the shoes of their employer. Additionally, Plaintiff cannot sustain his claims against CoreCivic because Plaintiff has failed to allege, much less establish, the existence of an official CoreCivic policy, practice, or custom that violated his constitutional rights. Accordingly, Plaintiff cannot sustain his official capacity claims and Defendants are entitled to a judgment as a matter of law.

Furthermore, even if Plaintiff had exhausted his administrative remedies, he cannot sustain individual capacity claims against Defendants because Plaintiff has failed to show that Defendants, through their own actions, violated the Constitution, either by personally encouraging or directly participating in the conduct that allegedly violated his rights. As to Plaintiff's individual capacity claims against Warden Leibach, Plaintiff has failed to allege sufficient personal involvement by Warden Leibach in the provision of medical treatment, and it is undisputed that Warden Leibach did not have any involvement in the medical treatment that was provided to Plaintiff during his incarceration at the Jail or in the maintenance of the bunk beds in the Jail. Docket No. 55, ¶ 15. Similarly, as to his claims against Dr. Bridges, Plaintiff has failed to allege sufficient personal involvement by Dr. Bridges in the maintenance of the bunk beds, and it is undisputed that Dr. Bridges and other medical providers performed numerous physical evaluations of Plaintiff, ordered Plaintiff hernia support undergarments, provided Plaintiff with medications as necessary, entered appropriate medical orders, ordered two ultrasounds for Plaintiff that were performed on

October 14, 2015 and February 9, 2016, and ordered a urology surgical consult for Plaintiff. Docket No. 54, ¶¶ 4, 5. Accordingly, Plaintiff cannot sustain his individual capacity claims and Defendants are entitled to a judgment as a matter of law.

## IV. Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 51) be GRANTED and that Plaintiff's claims be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

---
JEFFERY S. FRENSLEY
United States Magistrate Judge